**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE SIMCOE GROUP LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>STENTON ASSOCIATES; GALMAN<br>PROPERTIES HOLDINGS CORPORATION; &<br>STENTON GENERAL, L.P.,<br><br>               Defendants. | : <br> : <br> : Civil Case No. _____ <br> : <br> : <br> : JURY TRIAL DEMANDED <br> : <br> : <br> : <br> : <br> : <br> : |

## COMPLAINT

Plaintiff The Simcoe Group LLC ("Simcoe"), through its undersigned attorneys, hereby files this Complaint against Defendants Stenton Associates ("Stenton Associates"), Galman Properties Holdings Corporation ("Galman Properties"), and Stenton General, L.P. ("Stenton General," and collectively with Stenton Associates and Galman Properties, "Defendants"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

1.     This matter arises from Stenton Associates' misrepresentations of material operating expenses associated with a 59-unit apartment complex located at 1061 E. Mt. Airy Avenue (a/k/a 1051-61 Easton Road), Philadelphia, Pennsylvania (the "Property") that Simcoe agreed to purchase for $7.75 million.

2.     Simcoe is a real estate investment company that entered into a July 2025 Agreement of Sale (the "AOS") with Defendant Stenton Associates to acquire the Property and paid $150,000 in deposit funds on July 28, 2025, and September 25, 2025, pursuant to that agreement.

3.     As is typical, a critical component of Simcoe's evaluation of the transaction for the $7.75 million sale price was the accuracy of the Property's operating expenses, including water

and sewer utility costs.

4.      During the due diligence period provided for in the AOS, Stenton Associates provided documents and financial summaries purporting to accurately reflect those expenses and represented that the information it provided was accurate.

5.      Specifically, Stenton Associates represented to Simcoe that the Property's annual water and sewer utility bills were $17,850.

6.      In reliance on those representations, Simcoe proceeded with the transaction and executed amendments to the AOS while continuing efforts to secure financing from investors.

7.      As the scheduled closing date approached, Simcoe discovered that Stenton Associates had supplied financial information that was materially inaccurate and that the actual water and sewer expenses were $37,036, nearly double the amounts originally represented.

8.      Simcoe determined that these undisclosed and misstated expenses rendered the Property an unfeasible and undesirable investment and sought to terminate the AOS in accordance with its terms and recover its deposit.

9.      Rather than return the deposit, Stenton Associates declared Simcoe in default and retained the $150,000 deposit, despite its own material misrepresentations and failure to provide accurate expense information during due diligence.

10.     Simcoe therefore brings this action to recover its deposit and related damages it sustained as a result of Stenton Associates' unlawful and fraudulent conduct and material breaches of the AOS.

## PARTIES

11.     Simcoe is a New Jersey Limited Liability Company incorporated on February 16,

2021, with a principal place of business located at 10 N. County Line Road, Suite 105, Jackson, New Jersey.

12.    Simcoe's sole member is Israel Margulies ("Margulies"), an adult individual, who resides at 484 Matthews Lane, Jackson, New Jersey.

13.    Defendant Stenton Associates is a general partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 261 Old York Road, Suite 110, Jenkintown, Pennsylvania.

14.    Defendant Galman Properties is a Pennsylvania domestic business corporation with a principal place of business and registered office at 261 Old York Road, Suite 100, Jenkintown, Pennsylvania.

15.    Defendant Stenton General is a Pennsylvania domestic limited partnership with a principal place of business at 261 Old York Road, Suite 110, Jenkintown, Pennsylvania, and a registered office at 6100 Henry Avenue, Philadelphia, Pennsylvania.

16.    Galman Properties and Stenton General are Stenton Associates' general partners.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(1) because there is complete diversity between Simcoe's sole member and Stenton Associates' partners, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.    Venue is proper in the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in the Commonwealth of Pennsylvania, specifically within the City of Philadelphia and this judicial district. Venue is also proper in this district pursuant to 28

U.S.C. § 1391(b)(1) because Defendants reside in this judicial district.

19.    Defendants are subject to general and specific personal jurisdiction in this judicial district, as Defendants' principal places of business and headquarters are located in this judicial district; Defendants' registered agents are located in this judicial district; Defendants have systematic and continued contact, and not isolated activities, within this judicial district; Defendants have a regular and repeated presence in this judicial district; Defendants have availed themselves of the rights and benefits of the laws of the Commonwealth; and Defendants have conducted business relating to the AOS, which they signed in this judicial district, and sent communications regarding the AOS from this judicial district to Simcoe.

## STATEMENT OF FACTS

20.    Simcoe is a real estate syndication group that is in the business of purchasing and managing multi-family properties such as apartments and condominium complexes.

21.    Stenton Associates, Galman Properties, and Stenton General are just a few of many business entities operated by Jenkintown-based real estate mogul Arnold Galman.

22.    On July 22, 2025, Simcoe and Stenton Associates entered into the AOS for the sale of the Property, located at 1061 E. Mt. Airy Avenue (a/k/a 1051-61 Easton Road), Philadelphia, Pennsylvania. A true and correct copy of the AOS is attached hereto as **Exhibit A** and incorporated by reference in its entirety.

23.    Pursuant to the AOS, Simcoe was to pay Stenton Associates $7,750,000 to purchase the Property. Ex. A, § 2

24.    Additionally, Simcoe was required to pay an initial deposit of $100,000 upon execution of the AOS. Ex. A, § 2(a).

25.     Simcoe paid the initial deposit on July 28, 2025.

26.     At that time, the $100,000 deposit was held in escrow with Madison Title Agency.

27.     The Property is a 59-unit residential apartment complex.

28.     Simcoe intended to purchase the Property as an addition to its real estate portfolio.

29.     Additionally, Simcoe intended to manage and operate the Property as a landlord to each tenant residing there.

30.     The AOS provided Simcoe with the option to exercise due diligence of the Property within thirty (30) days after signing the AOS (the "Due Diligence Provision"). Ex. A, § 5.

31.     Among other things, the Due Diligence Provision permitted Simcoe to "review all local laws, regulations, ordinances, determinations and conditions affecting the Property, and the income and expenses of the Property, in order to determine to its own satisfaction that the Property is suitable for Buyer's intended uses and that Buyer wishes to proceed to close [the] Agreement." *Id.*

32.     Similarly, the Due Diligence Provision required Stenton Associates, upon Simcoe's request, to "provide Buyer with access to all documents in the possession or control of Seller and/or its consultants pertaining to the Property[.]" *Id.*

33.     If Simcoe's inspections revealed any matters deemed unacceptable by Simcoe, then Simcoe was permitted to "cancel [the] [AOS] for any reason or no reason on or before 5:00 pm eastern time on the last day of the Inspection Period." *Id.*

34.     In the event that the AOS was terminated according to its terms and the transfer of title did not close, Simcoe was "entitled to a return of the Deposit" and the parties would have no further obligations to each other. Ex. A, § 4(b).

35.     As is common in the business of purchasing and managing apartment complexes, the Property's expenses play a crucial role in determining its value to a purchaser/investor because, among other reasons, the purchaser must determine the rental value of the units and the opportunity for profits in acquiring the complex.

36.     Accordingly, the Due Diligence Provision provided Simcoe with an essential tool for assessing the Property's expenses and ensuring that purchasing the Property would be a profitable business endeavor.

37.     Thus, during the thirty (30) day period prescribed by the Due Diligence Provision (the "Inspection Period"), Simcoe requested from Stenton Associates and/or its broker various expense sheets, invoices, and bills related to operating the Property.

38.     In July 2025, during the Inspection Period, Simcoe requested that Stenton Associates produce the Property's monthly water and sewage utility bills.

39.     In response, on or around July 29, 2025, Stenton Associates, through its broker, Madison Wolfgang of Jones Lang LaSalle Capital Markets ("JLL"), submitted four spreadsheets it represented to Simcoe as the water and sewage utility bills for the months of November 2024 (the "November 2024 Spreadsheet," attached hereto as **Exhibit B**), December 2024 (the "December 2024 Spreadsheet," attached hereto as **Exhibit C**), May 2025 (the "May 2025 Spreadsheet," attached hereto as **Exhibit D**), and June 2025 (the "June 2025 Spreadsheet," attached hereto as **Exhibit E**) (collectively, the "Spreadsheets").

40.     The Spreadsheets were not actual bills and, unbeknownst to Simcoe, were not representative of the true water and sewer utility bills assessed by the Philadelphia Water Department.

6

41.     Accordingly, Simcoe contacted JLL on July 30, 2025, and informed it of Stenton Associates' failure to supply actual water and sewer utility bills, stating that "[t]he water bills are excel sheets, can [Simcoe] please have original water bills?" Email Chain Between Simcoe and JLL, attached hereto as **Exhibit F**.

42.     In other words, Simcoe specifically requested during the Inspection Period that Stenton Associates provide it with water and sewer utility bills, as Simcoe was permitted to request under the Due Diligence Provision of the AOS.

43.     In response, on July 31, 2025, Stenton Associates, through Madison Wolfgang at JLL, represented to Simcoe that "Philadelphia sends a master spreadsheet with all Philly properties, [Stenton Associates] do[es] not get invoices" for the water and sewer utility bills. *Id.*

44.     In sum, Stenton Associates, in response to Simcoe's request, falsely represented that the Spreadsheets were the only documents the Philadelphia Water Department provided Stenton Associates with when it assessed water and sewer utility fees on the Property.

45.     Because the accuracy of the water and sewer utility bills was material to Simcoe's decision to purchase the Property, Simcoe again requested that Stenton Associates provide actual water and sewer utility bills on August 1, 2025. *Id.*

46.     On August 4, 2025, JLL responded that Stenton Associates was "unable to get actual water bills." *Id.*

47.     Simcoe once again requested that Stenton Associates provide more detailed information regarding the water and sewer utility bills on August 18, 2025, informing JLL that Simcoe "still didn't get a clear picture on the water bills. It's very hard to read the excel sheet. Can [Stenton Associates] provide amounts paid monthly or quarterly?" *Id.*

48.    In response to Simcoe's request for more information regarding the Property's monthly expenses on water and sewer bills, Stenton Associates, through JLL, told Simcoe that "[t]he amounts paid monthly for water are included in the T12."

49.    The T12 is a Trailing Twelve-Month Profit Spreadsheet (the "T12" or "TTM") that shows the same amounts in water and sewage utility bills as the Spreadsheets. The T12 is attached hereto as **Exhibit G.**

50.    Stenton Associates provided Simcoe with the T12 early in the Inspection Period, in or around late July 2025.

51.    The T12 provided that the monthly water and sewage utility bills for the Property were as follows:

    a.    November 2024: $729

    b.    December 2024: $718

    c.    January 2025: $5405

    d.    February 2025: $1248

    e.    March 2025: $1194

    f.    April 2025: $1222

    g.    May 2025: $1196

    h.    June 2025: $1204

    i.    July 2025: $1204

    j.    August 2025: $1243

    k.    September 2025: $1238

    l.    October 2025: $1249

52.    As illustrated above, the T12 that Stenton Associates provided to Simcoe represented that the annual water and sewer utility bills were $17,850.

53.    These values were acceptable to Simcoe, and it determined, based on them, among other factors, that the Property would be a viable investment.

54.    In other words, Simcoe requested at least four (4) times during the Inspection Period that Stenton Associates provide accurate information regarding the Property's water and sewer utility bills.

55.    As discussed above, accurate information relating to the water and sewer utility bills is material to a real estate syndicate group like Simcoe because that information directly impacts its assessment of a property's prospective value as a rental investment.

56.    After the AOS was executed, Simcoe and Stenton Associates reinstated and amended the AOS on September 8, 2025, and October 30, 2025, as they worked through negotiations of the sale not related to the water and sewage utility bills.

57.    Throughout the above-referenced period, Stenton Associates did not, at any point, indicate that the information provided in connection with the water and sewage utility bills was inaccurate, despite knowing that Simcoe was relying on the wrong information it previously provided.

58.    Pursuant to the Reinstatement of AOS and Amendment dated September 8, 2025 (the "First Amendment"), Simcoe furnished to Stenton Associates an additional $50,000 towards the deposit, for a total deposit of $150,000. First Amendment, attached hereto as **Exhibit H**, § C(3).

59.    Simcoe paid the additional $50,000 deposit to Madison Title Agency on September

25, 2025.

60.      Subsequently, Simcoe and Stenton Associates executed a Second Amendment to the Agreement of Sale (the "Second Amendment") on October 30, 2025, whereby the parties agreed to extend the closing date to December 1, 2025. A true and correct copy of the Second Amendment is attached hereto as **Exhibit I**.

61.      Pursuant to the terms of the Second Amendment, Madison Title Agency was authorized to immediately transfer all $150,000 in deposit funds to Stenton Associates.

62.      Madison Title Agency transferred and Stenton Associates received the $150,000 in deposit funds on or about October 30, 2025.

63.      Leading up to the December 1, 2025, closing date, Simcoe embarked on finding potential investors for the Property.

64.      During this period, certain potential investors reviewed the documents submitted by Stenton Associates and determined that the $17,850 in annual water and sewer utility bills provided by Stenton Associates on the T12 for the Property were significantly undervalued, given the nature of the Property.

65.      Simcoe immediately brought the investors' concerns to Stenton Associates' attention.

66.      Stenton Associates, through JLL, denied that there were any inaccuracies regarding the water and sewer utility fee numbers that it had previously provided to Simcoe.

67.      Because of this ongoing dispute over the true amount of the water and utility bills, the parties did not close on the Property on December 1, 2025, and the closing date was postponed until December 12, 2025.

68.     On December 11, 2025, Simcoe's counsel sent a letter to Stenton Associates stating that the water and sewer utility bills were inaccurate and demanding a reduced purchase price of $6.5 million, which Stenton Associates did not accept. A copy of counsel's letter to Stenton Associates is attached hereto as **Exhibit J**.

69.     On December 12, 2025, the true amount of the water and sewer utility bills still remained unclear, and the parties did not close on the Property.

70.     Then, on or about December 16, 2025, Stenton Associates contacted Simcoe and stated that the T12 it had previously provided contained inaccurate information.

71.     Stenton Associates provided Simcoe with a new and revised T12 (the "Updated T12"). The Updated T12 is attached hereto as **Exhibit K**.

72.     Remarkably, the amounts of the water and sewer utility bills reflected in the Updated T12 were significantly greater than those reflected in the original T12.

73.     The Updated T12 provided that the monthly water and sewage utility bills for the Property were as follows:

　　　　a.　　November 2024: $729

　　　　b.　　December 2024: $718

　　　　c.　　January 2025: $5405

　　　　d.　　February 2025: $3194

　　　　e.　　March 2025: $3022

　　　　f.　　April 2025: $3296

　　　　g.　　May 2025: $3104

　　　　h.　　June 2025: $3104

11

     i.       July 2025: $3243

     j.       August 2025: $3338

     k.      September 2025: $3799

     l.      October 2025: $4084

74.    As the above makes clear, the actual annual cost of the Property's water and sewer utility bills is roughly $37,000 – nearly **double** the value Stenton Associates represented in the initial T12.

75.    Stenton Associates did not provide the actual cost of the water and sewer utility bills until after the Inspection Period had lapsed.

76.    In an acknowledgment that it provided material misinformation to Simcoe relating to the Property, Stenton Associates offered Simcoe a $500,000 reduction in the Property's purchase price, stating that it still wished to sell the Property to Simcoe for a purchase price of at least $7 million.

77.    Simcoe, however, did not accept Stenton Associates' offer because it determined that the cost of the water and sewer utility bills rendered the Property an undesirable investment for a $7 million purchase price.

78.    Given that the parties were at an impasse regarding the purchase price for the Property, Simcoe demanded that Stenton Associates return the security deposit.

79.    Stenton Associates immediately offered Simcoe a $75,000 refund from its deposit funds (which represents only half of the security deposit Simcoe paid). Simcoe did not accept Stenton Associates' offer.

80.    Simcoe, however, sought to terminate the AOS and subsequent Amendments and

recover its $150,000 deposit after discovering Stenton Associates' misrepresentations.

81.    Rather than return the security deposit to Simcoe, Stenton Associates unlawfully retained Simcoe's deposit, despite Stenton Associates' own conduct preventing the closing of the Property on the terms set forth in the AOS.

82.    In a letter dated December 19, 2025, Stenton Associates' counsel sent Simcoe a letter accusing Simcoe of defaulting under the AOS and stating that Stenton Associates would retain the $150,000 in deposit funds as a result (the "December 19 Letter"). A true and correct copy of the December 19 Letter is attached hereto as **Exhibit L**.

83.    The December 19 Letter disingenuously states that Stenton Associates "has been ready, willing and able to fulfill its obligations to sell the Property but as of 5:00 pm on the date hereof, Buyer failed to complete the purchase of the Property in accordance with the terms and conditions of the Agreement." Ex. L, p. 1.

84.    The December 19 Letter further incorrectly stated that "the transaction has failed to close due to the default of Buyer and Seller hereby exercises its rights under Section 25(b) of the Agreement to terminate the Agreement and Seller shall retain the Deposit as liquidated damages." *Id.* at p. 2.

85.    Despite Stenton Associates' allegations in the December 19 Letter, the reality is that Stenton Associates intentionally misrepresented a material aspect related to the Property's expenses, concealed the true cost of the water and sewer utility bills, provided Simcoe with fraudulent and misleading documents representing a reduced value of the water and sewer utility bills, offered a discount on the Property after Simcoe discovered Stenton Associates' misrepresentations, and still retained Simcoe's deposit funds, despite Simcoe's right under the AOS

to terminate the sale and receive a refund of its deposit.

86.    Stenton Associates knew that the actual fees assessed on the Property for water and sewer utilities would be undesirable to Simcoe, so it did not disclose them.

87.    To be sure, Simcoe would not have initially agreed to purchase the Property for $7.75 million if it had known that the annual water and sewer utility bills were that high.

88.    Similarly, upon learning of the actual cost of the water and sewer utility bills, Simcoe still rejected a reduced purchase price of $7 million.

89.    Thus, as described above, Stenton Associates went to great lengths to conceal the accurate figures assessed for water and sewer utilities, including misrepresenting the amounts Stenton Associates paid monthly in the T12.

90.    Stenton Associates did so to induce Simcoe to purchase the Property, and to purchase it at a price favorable to Stenton Associates.

91.    Upon learning the actual cost of water and sewer utilities, Simcoe no longer wished to purchase the Property and exercised its right to cancel the AOS and subsequent amendments.

92.    Stenton Associates, in response, knowingly and unlawfully retained the deposit funds to which Simcoe was entitled a return of under the terms of the AOS.

93.    Simcoe has been damaged in an amount no less than $150,000 as a result of Stenton Associates' fraudulent conduct and breaches of the AOS.

## COUNT I – BREACH OF CONTRACT

### (By Simcoe Against Stenton Associates)

94.    Simcoe repeats each allegation in each of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

95.    As discussed herein, the Due Diligence Provision of the AOS permitted Simcoe to "review all local laws, regulations, ordinances, determinations and conditions affecting the Property, and the income and expenses of the Property, in order to determine to its own satisfaction that the Property is suitable for Buyer's intended uses and that Buyer wishes to proceed to close [the] Agreement." *Id.*

96.    The Due Diligence Provision also required Stenton Associates, upon Simcoe's request, to "provide Buyer with access to all documents in the possession or control of Seller and/or its consultants pertaining to the Property[.]" *Id.*

97.    If Simcoe's inspections revealed any matters deemed unacceptable by Simcoe, then Simcoe was permitted to "cancel [the] Agreement for any reason or no reason on or before 5:00 pm eastern time on the last day of the Inspection Period." *Id.*

98.    In the event that the AOS was terminated in accordance with its terms and the transfer of title did not close, Simcoe was "entitled to a return of the Deposit," and the parties would have no further obligations to each other. Ex. A, § 4(b).

99.    Simcoe, as permitted by the AOS, requested numerous documents evidencing the true cost of the Property's water and sewer utility bills.

100.    Stenton Associates provided Simcoe with fraudulent and fictitious documents in response to Simcoe's requests.

101.    Stenton Associates' misrepresentations to Simcoe were deemed unacceptable by Simcoe, thus entitling it to cancel the AOS and receive a return of its deposit funds.

102.    Stenton Associates refused to return Simcoe's deposit.

103.    Stenton Associates, therefore, materially breached the AOS and caused Simcoe to

suffer damages as a result of its breach.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendant Stenton Associates for damages in an amount not less than $150,000, plus interest, as well as such other relief as this Court deems equitable and just under the circumstances.

## COUNT II – BREACH OF CONTRACT – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (By Simcoe Against Stenton Associates)

104.    Simcoe repeats each allegation in each of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

105.    Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in performance and its enforcement.

106.    Stenton Associates breached its duty of good faith and fair dealing by misrepresenting a material aspect of the Property's expenses, concealing the true cost of the water and sewer utility bills, and providing Simcoe with fraudulent and misleading documents that misrepresented the reduced value of those bills.

107.    Likewise, Stenton Associates breached its duty of good faith and fair dealing by falsely claiming that Simcoe, not Stenton Associates, breached the AOS and caused the parties' failure to close on the Property, and thereafter refusing to return to Simcoe the $150,000 in deposit funds.

108.    Simcoe has suffered damages as a result of Stenton Associates' breach.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendant Stenton Associates for damages in an amount not less than $150,000, plus interest, as well as such other relief as this Court deems equitable and just under the circumstances.

16

## COUNT III – UNJUST ENRICHMENT

### (By Simcoe Against Stenton Associates)

109.    Simcoe repeats each allegation in each of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

110.    Stenton Associates remains in possession of Simcoe's $150,000 deposit, despite causing the closing of the Property not to occur.

111.    Simcoe was permitted by the AOS to "cancel [the] Agreement for any reason or no reason" if it deemed any matters relating to the Property as unacceptable.

112.    Similarly, Simcoe is entitled to a return of the deposit funds under the AOS.

113.    Simcoe conferred a benefit on Stenton Associates in the form of $150,000 in deposit funds.

114.    Stenton Associates appreciated and continues to unjustly retain the deposit funds.

115.    Under the circumstances, it would be inequitable for Stenton Associates to retain the benefit of the deposit funds.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendant Stenton Associates for damages in an amount not less than $150,000, plus interest, as well as such other relief as this Court deems equitable and just under the circumstances.

## COUNT IV – FRAUDULENT MISREPRESENTATION

### (By Simcoe Against Stenton Associates)

116.    Simcoe repeats each allegation in each of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

117.    Stenton Associates represented to Simcoe that the Spreadsheets were the "water

17

and sewer utility bills" received by the Philadelphia Water Department.

118.    Stenton Associates represented to Simcoe that the information contained in the Spreadsheets was accurate.

119.    Stenton Associates represented to Simcoe that the T12 accurately reflected the Property's water and sewer utility bills.

120.    Because of the nature of the Property, these representations were material to the AOS.

121.    Stenton Associates' representations regarding the water and sewer utility bills were false.

122.    At all times, Stenton Associates represented to Simcoe that the water and sewer utility bills were accurate, knowing that such representations were false.

123.    Stenton Associates falsely represented the Property's water and sewer utility bill amounts with the intent to mislead Simcoe and induce Simcoe to pay a higher purchase price for the Property.

124.    Simcoe justifiably relied on Stenton Associates' representations.

125.    Had Simcoe known the true value of the water and sewer utility bills and/or that Stenton Associates misrepresented the cost of the water and sewer utility bills in the T12, Simcoe would not have entered into the AOS, the First Amendment, or the Second Amendment, nor would it have furnished to Stenton Associates $150,000 in deposit funds.

126.    As a result of Stenton Associates' misrepresentations, Simcoe has been defrauded of the $150,000 in deposit funds it provided to Stenton Associates.

127.    Stenton Associates' conduct was wanton, outrageous, and extreme, warranting the

imposition of punitive damages.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendant Stenton Associates for damages in an amount not less than $150,000, plus interest and punitive damages, and such other relief as this Court deems equitable and just under the circumstances.

## COUNT V – NEGLIGENT MISREPRESENTATION

### (By Simcoe Against Stenton Associates)

128.    Simcoe repeats each allegation in each of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

129.    Stenton Associates represented to Simcoe that the Spreadsheets were the "water and sewer utility bills" received by the Philadelphia Water Department.

130.    Stenton Associates represented to Simcoe that the information contained in the Spreadsheets was accurate.

131.    Stenton Associates represented to Simcoe that the T12 was an accurate reflection of the Property's water and sewer utility bills.

132.    Because of the nature of the Property, these representations were material to the AOS.

133.    Stenton Associates' representations regarding the water and sewer utility bills were false.

134.    At all the times Stenton Associates represented to Simcoe the false water and sewer utility bills, it knew that such representations were false.

135.    Stenton Associates falsely represented the Property's water and sewer utility bill amounts with the intent of misleading Simcoe and inducing Simcoe to pay a higher purchase price

19

for the Property.

136.    Simcoe justifiably relied on Stenton Associates' representations.

137.    Had Simcoe known the true value of the water and sewer utility bills and/or that Stenton Associates misrepresented the cost of the water and sewer utility bills in the T12, Simcoe would not have entered into the AOS, the First Amendment, or the Second Amendment, nor would it have furnished to Stenton Associates $150,000 in deposit funds.

138.    As a result of Stenton Associates' misrepresentations, Simcoe has been defrauded of the $150,000 in deposit funds it provided to Stenton Associates.

139.    Stenton Associates' conduct was wanton, outrageous, and extreme, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendant Stenton Associates for damages in an amount not less than $150,000, plus interest and punitive damages, and such other relief as this Court deems equitable and just under the circumstances.

## COUNT VI – FRAUDULENT INDUCEMENT

### (By Simcoe Against Stenton Associates)

140.    Simcoe repeats each allegation in each of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

141.    Stenton Associates represented to Simcoe that the Spreadsheets were the "water and sewer utility bills" received by the Philadelphia Water Department.

142.    Stenton Associates represented to Simcoe that the information contained in the Spreadsheets was accurate.

143.    Stenton Associates represented to Simcoe that the T12 accurately reflected the

Property's water and sewer utility bills.

144.    Because of the nature of the Property, these representations were material to the AOS.

145.    Stenton Associates' representations regarding the water and sewer utility bills were false.

146.    As the Property owner, Simcoe should have known that its representations of the water and sewer utility bills were false.

147.    Stenton Associates falsely represented the Property's water and sewer utility bill amounts with the intent of inducing Simcoe to pay a higher purchase price for the Property.

148.    Simcoe justifiably relied on Stenton Associates' representations.

149.    Had Simcoe known the true value of the water and sewer utility bills and/or that Stenton Associates misrepresented the cost of the water and sewer utility bills in the T12, Simcoe would not have entered into the AOS, the First Amendment, or the Second Amendment, nor would it have furnished to Stenton Associates $150,000 in deposit funds.

150.    As a result of Stenton Associates' misrepresentations, Simcoe has been deprived of the $150,000 in deposit funds given to Stenton Associates.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendant Stenton Associates for damages in an amount not less than $150,000, plus interest and such other relief as this Court deems equitable and just under the circumstances.

## COUNT VII – CONVERSION

### (By Simcoe Against Stenton Associates)

151.    Simcoe repeats each allegation in each of the preceding paragraphs of this

21

Complaint with the same force and effect as if set forth herein.

152.    Stenton Associates, by failing to return the $150,000 in deposit funds to which Simcoe is lawfully entitled, has deprived Simcoe of its rights in and possession of the funds.

153.    The $150,000 constitutes a chattel belonging to Simcoe.

154.    Stenton Associates has retained the $150,000 deposit funds in contravention of Simcoe's rights under the AOS and without Simcoe's consent.

155.    Stenton Associates retained the funds without lawful justification.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendant Stenton Associates for damages in an amount not less than $150,000, plus interest, as well as such other relief as this Court deems equitable and just under the circumstances.

## COUNT VIII – JOINT AND SEVERAL LIABILITY

**(By Plaintiff Against Galman Properties and Stenton General)**

156.    Simcoe repeats each allegation in each of the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

157.    Under Pennsylvania's general partnership law, "all partners are jointly and severally liable for all debts, obligations and other liabilities of the partnership unless otherwise agreed by the claimant or provided by law." 15 Pa.C.S.A. § 8436(a).

158.    "[A] partner may be joined in an action against the partnership or named in a separate action." 15 Pa.C.S.A. § 8437(b).

159.    Galman Properties and Stenton General are the general partners of Stenton Associates, a Pennsylvania general partnership.

160.    Galman Properties and Stenton General are therefore jointly and severally liable

for Stenton Associates' actions described herein.

WHEREFORE, Plaintiff Simcoe respectfully demands judgment against Defendants Galman Properties and Stenton General for damages in an amount not less than $150,000, plus interest, punitive damages, and such other relief as this Court deems equitable and just under the circumstances.

### JURY TRIAL DEMANDED

Simcoe demands a jury trial on all claims and issues of the Complaint so triable.


DATE: March 13, 2026                    Respectfully Submitted,

                                        KANG HAGGERTY LLC


                                        /s/ *Kandis L. Kovalsky*
                                        Kandis L. Kovalsky
                                        Kyle Hannigan (*pro hac vice* forthcoming)
                                        Kang Haggerty LLC
                                        123 South Broad Street, Suite 1950
                                        Philadelphia, Pennsylvania 19109
                                        (215) 525-5850 (tel)
                                        (215) 525-5860 (fax)
                                        ekang@kanghaggerty.com
                                        kkovalsky@kanghaggerty.com
                                        khannigan@kanghaggerty.com

                                        *Counsel for Plaintiff*